IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–01829–EWN–CBS


LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,

     Plaintiff,

v.

LIEBERT CORPORATION, an Ohio company, and
STILLWELL-HANSEN INC., a New Jersey company,

     Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

     This is a breach of contract case.  Plaintiff Level 3 Communications, LLC asserts a claim against Defendant Liebert Corporation for breach of contract and asserts claims against Defendants Liebert Corporation and Stillwell-Hansen for intentional misrepresentation, fraudulent concealment, and negligent misrepresentation.  This matter is before the court on "Defendants' Motion for Summary Judgment," filed May 17, 2004.  Jurisdiction is based on 28 U.S.C. § 1332 (2005).

## FACTS

### 1.    *Factual Background*

     On December 30, 1999, Plaintiff and Defendants entered into a written "Basic Purchase Agreement" (the "agreement").  (Br. in Supp. of Defs.' Mot. for Summ. J., Statement of

Undisputed Material Facts ¶ 1 [filed May 17, 2004] [hereinafter "Defs.' Br."]; *admitted at* Level 3's Resp. to Defs.' Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 1 [filed June 16, 2004] [hereinafter "Pl.'s Resp."].)[1]  Pursuant to the agreement, Plaintiff purchased various products from Defendants.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)  Among the products Plaintiff purchased were uninterruptible power supply ("UPS") systems.  (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)

Defendant Liebert manufactures the UPS systems, but does not manufacture the batteries used in such systems.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)  The agreement provides that: (i) "[a]ll purchases of [p]roducts by [Plaintiff] shall be made by means of purchase orders;" (ii) each purchase order "shall constitute an offer by [Plaintiff] to purchase the products set forth therein;" and (iii) the "quantity and description" of the products shall be as specified in the purchase orders.  (*Id.*, Statement of Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.)  Each purchase order incorporated the terms of the agreement.  (*Id.*)

On July 11, 2000, Plaintiff purchased batteries from Defendants for a UPS system for use and installation on the seventh floor of a telecommunications co-location called "Mondo

---

[1]Plaintiff alleges that Defendant Stillwell-Hansen acted as Defendant Liebert's agent in the transaction at issue in this lawsuit.  With the exception of the first claim for relief, all of Defendants' points in support of their motion for summary judgment apply equally to both Defendants.  Thus, I refer to both Defendants collectively as "Defendants."

Condo," operated at 85 Tenth Avenue, New York, New York.  (*Id*., Statement of Undisputed

Material Facts ¶ 7; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ 7; Compl. ¶ 9 [filed Aug. 26, 2003] [hereinafter "Compl."].)  In 2000, there was

a high demand for co-location space like Mondo Condo as well as the equipment for such space,

including UPS systems.  (*Id*., Statement of Undisputed Material Facts ¶ 8; *admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.)  This high demand lengthened the

lead time for delivery of batteries and other equipment used by Plaintiff at the Mondo Condo

project.  (*Id*., Statement of Undisputed Material Facts ¶ 9; *admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Material Facts ¶ 9.)  In June 2000, Defendant Liebert advised Plaintiff

that lead times for batteries for the UPS system at Mondo Condo would stretch well into

September 2000.  (*Id*., Statement of Undisputed Material Facts ¶ 10; *admitted at* Pl.'s Resp.,

Resp. to Statement of Undisputed Material Facts ¶ 10.)

     In September 2000, the battery manufacturer for the UPS systems informed Defendants

that it could not meet the September delivery date.  (*Id*., Statement of Undisputed Material Facts

¶ 11; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 11.)

Defendants passed this information along to Plaintiff.  (*Id*.)  Upon notification from Defendants

that they could not deliver the standard fifteen-minute ride-through time batteries,[2] Plaintiff

elected to use new six minute batteries instead.  (*Id*., Statement of Undisputed Material Facts ¶

13; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶

---

[2]"Ride-through time" in reference to the batteries means the amount of time during which
batteries will carry the actual power load for the UPS system.  (Defs.' Br., Statement of
Undisputed Material Facts ¶ 19; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed
Material Facts ¶ 19.)

13.)  Accordingly, Plaintiff instructed Keith Driscoll, Defendant Liebert's representative, to

obtain new six minute batteries.  (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted in*

*relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.)  Plaintiff

contends that it purchased such six minute batteries because that was the solution proposed by

Driscoll.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14; Statement of

Additional Facts ¶ 4.)[3]  Driscoll called Defendant Liebert's engineer, Mark Miersen, and told him

of the need for a six-minute battery.  (Pl.'s Resp., Statement of Additional Facts ¶ 5; Ex. 14 at 61

[Dep. of Keith Driscoll].)  In an effort to locate the batteries for Plaintiff, Miersen called

equipment re-seller Dwight Kauf, who worked for Stationary Power Services, and asked him if he

had any six-minute batteries for sale.  (*Id.*, Ex. 3 at 80, 83 [Dep. of Mark Miersen].)  Kauf

---

[3]Defendants did not follow my procedural rules in their reply brief.  My procedural rules require that

> [i]f the movant desires to file a reply brief, it will . . .[i]n a separate section styled
> "Response Concerning Disputed Facts" (with
> respect to each fact which the opposing party,
> pursuant to paragraph 5, claims to be in dispute),
> either admit that the fact is disputed or supply a
> *brief* factual explanation for his position that the
> fact is undisputed, accompanied by a *specific*
> *reference* to material in the record which establishes
> that the fact is undisputed.  This will be done in
> paragraphs numbered to correspond with the
> opposing party's paragraph numbering.

(*See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 6 [emphasis in original].)  Defendants did not specifically admit or deny any of Plaintiff's additional disputed facts.  It is evident that Defendants understood my procedural rules because they responded, without admission or denial, to four of Plaintiff's forty-four additional disputed facts in a separate section entitled "Response Concerning Additional Facts." I deem admitted the additional facts proffered by Plaintiff in which Defendants do not admit, deny, or address in any fashion.

ultimately located and purchased the six-minute batteries from Phillips Communication. (*Id.*, Statement of Additional Facts ¶ 6, Ex. 16 at 49–50, 60–62 [Dep. of Dwight Kauf].) After acquiring the batteries from Phillips, Kauf sold them to Defendant Liebert who in turn sold them to Plaintiff. (*Id.*, Statement of Additional Facts ¶ 12, Ex. 16 at 42–43 [Dep. of Dwight Kauf].) These are the batteries at issue in this lawsuit.

The batteries that Phillips sold to Defendant Liebert were originally from a cancelled order in Canada and were stored in a warehouse. (*Id.*, Statement of Additional Facts ¶ 6, Ex. 16 at 49–50, 60–62 [Dep. of Dwight Kauf].) Phillips shipped the batteries directly from the warehouse in Virginia to Mondo Condo. (*Id.*, Statement of Additional Facts ¶ 13, Ex. 16 at 107–08 [Dep. of Dwight Kauf].) Neither Kauf, Miersen, nor Driscoll ever took custody of or saw the batteries. (*Id.*, Statement of Additional Facts ¶ 13, Ex. 16 at 47 [Dep. of Dwight Kauf], Ex. 3 at 92–93 [Dep. of Mark Miersen], Ex. 14 at 114–15 [Dep. of Keith Driscoll].) Driscoll's understanding was that the batteries were coming from storage and were two years old. (*Id.*, Statement of Additional Facts ¶ 17, Ex. 14 at 86–87 [Dep. of Keith Driscoll].) Miersen never spoke to Plaintiff or Plaintiff's representatives regarding the age or maintenance history of the batteries. (*Id.*, Statement of Additional Facts ¶ 23, Ex. 3 at 110 [Dep. of Mark Miersen].) Plaintiff, through its employees, believed at all times in the fall of 2000 that the batteries were new and factory fresh, consistent with all prior dealings between Defendants and Plaintiff. (*Id.*, Statement of Additional Facts ¶ 24; *deemed admitted at* Defs.' Reply at 10–11.) On September 27, 2000, Driscoll sent an electronic mail message to Anthony Sirotka, the Mondo Condo project manager, that said: "[p]er our discussion at today's job meeting, please note the deduct to change

the battery from the GNB 15 minute to the 6 minute GNB.  This new battery can be on site in four weeks."  (Pl.'s Resp., Ex. 9 [9/27/00 Electronic Mail Message from Driscoll to Sirotka].)

On or about October 9, 2000, Defendant Liebert submitted a quote to Plaintiff for "[f]our (4) GNB Battery Systems with six minutes of ride-through time" to be used in a UPS system. (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.)  On or about October 30, 2000, Plaintiff submitted a purchase order to Defendant Liebert for four GNB battery systems with six minutes of ride-through time. (*Id.*, Statement of Undisputed Material Facts ¶ 17; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 17.)

After purchasing the batteries, Plaintiff sold them to Lehman Brothers' as part of its lease of the seventh floor of Mondo Condo.  (*Id.*, Statement of Undisputed Material Facts ¶ 24; *admitted in substance at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 24.) The lease agreement between Plaintiff and Lehman Brothers' required that all equipment, including the batteries be in "working order and operating substantially in accordance with manufacturer's specifications."  (Pl.'s Resp., Statement of Additional Facts ¶ 27, Ex. 6 at 96 [Dep. of Nat Tafuri], Ex. 13 at 7–9 [Dep. of Oliver Papraniku].)  As part of its due diligence, Lehman Brothers' retained an independent testing company called Sonoma Technical Services, Inc. ("Sonoma") to perform a discharge test on the batteries to verify their capacity."  (*Id.*, Statement of Additional Facts ¶ 28, Ex. 20 at 12–14 [Dep. of Edward Roselli].)  Following this testing, Plaintiff learned for the first time, that the batteries were not rated for six minutes at the specified load, but rather were fifteen-minute batteries.  (*Id.*, Statement of Additional Facts ¶ 29, Ex. 6 at 77–78 [Nat Tafuri].)  At the time that Defendant Liebert sold the batteries to Plaintiff,

the cells in the batteries were between two to five years old.  (*Id.*, Statement of Additional Facts ¶ 30, Ex. 13 at 28–29 [Dep. of Oliver Papraniku].)  At all times prior to the testing, Defendants maintained that the batteries were new when they sold them to Plaintiff.  (*Id.*, Statement of Additional Facts ¶ 30, Ex. 13 at 61–62 [Dep. of Oliver Papraniku], Ex. 21 at 45–46 [Dep. of Oliver Papraniku], Ex. 19 at 159–60, 168 [Dep. of Edward Ramirez].)  The December 2001 capacity tests conducted by Sonoma indicated that the batteries had 66% of their rated capacity. (*Id.*, Statement of Additional Facts ¶ 31, Ex. 10 ¶ 9 [Aff. of John D. Smith].)  The governing standard for battery capacity, IEEE 1188, provides that a battery should be replaced once its measured capacity is less than 80% of full rated capacity.  (*Id.*, Statement of Additional Facts ¶ 32, Ex. 10 ¶ 10 [Aff. of John D. Smith], Ex. 24 at 9 [IEEE Standards].)  In fact, Defendant Liebert's own policy is not to install a battery that is less than 80% of its rated capacity because that signifies "an end of life."  (*Id.*, Statement of Additional Facts ¶ 33, Ex. 3 at 125 [Dep. of Mark Miersen.)  Lehman Brothers' determined that the batteries were defective because they tested at less than 80% of rated capacity and did not meet manufacturer's specifications as required by Lehman Brothers' lease with Plaintiff.  (*Id.*, Statement of Additional Facts ¶ 34.)

On January 21, 2001, Plaintiff's construction manager, advised Driscoll that Plaintiff had concluded the batteries did not meet manufacturer's standards and Plaintiff was requesting a warranty replacement of the batteries.  (*Id.*, Statement of Additional Facts ¶ 35, Ex. 19 at 170–71 [Dep. of Edward Ramirez], Ex. 14 at 149 [Dep. of Keith Driscoll].)  Defendants questioned the validity of the December 2001 tests performed by Sonoma.  (*Id.*, Statement of Additional Facts ¶ 36.)  All concerned parties agreed to participate in a re-test and similarly agreed on a test protocol.  (*Id.*, Statement of Additional Facts ¶ 37, Ex. 20 at 23, 25–26, 28 [Dep. of Frank

Edward Roselli], Ex. 13 at 89–90 [Dep. of Oliver Papraniku].)  Sonoma re-tested one string of

batteries on March 30, 2002, and the batteries failed the test.  (*Id.*, Statement of Additional Facts

¶¶ 37–38, Ex. 14 at 193–95 [Dep. of Keith Driscoll].)  In light of the fact that the batteries failed

this test, Lehman Brothers' decided that the batteries were unacceptable and had to be replaced.

(*Id.*, Statement of Additional Facts ¶ 39, Ex. 10 ¶ 11 [Aff. of John D. Smith].)  Plaintiff renewed

its request to Defendant Liebert to stand behind the batteries and assist Plaintiff in resolving

Lehman Brothers' request for new batteries for the seventh floor of Mondo Condo.  (*Id.*,

Statement of Additional Facts ¶ 41, Ex. 15 ¶ 10 [Aff. of Nat Tafuri].)  Defendant Liebert

informed Plaintiff that it was "not willing to accept any responsibility for battery replacement

costs."  (*Id.*, Statement of Additional Facts ¶ 42, Ex. 21 [5/14/02 Electronic Mail Message from

Defendant Liebert to Nat Tafuri].)

**2.**     ***Procedural History***

Plaintiff filed its complaint in Colorado State District Court in Broomfield County,

Colorado on August 26, 2003.  (Compl.)  Plaintiff asserted claims for (1) breach of contract

against Defendant Liebert; (2) intentional misrepresentation against both Defendants; (3)

fraudulent concealment against both Defendants; and (4) negligent misrepresentation against both

Defendants.  (*Id.* ¶¶ 22–44.)  Defendant Liebert filed its answer on September 16, 2003.  (Def.

Liebert's Answer [filed Sept. 16, 2003].)  On September 17, 2003, Defendant Liebert filed a

notice of removal to federal court.  (Notice of Removal [filed Sept. 17, 2003].)  Defendant

Stillwell-Hansen consented to the removal action.  (*Id.*, Ex. B.)  Defendant Stillwell-Hansen filed

its answer on September 26, 2003 in this court.  (Def. Stillwell-Hansen's Answer [filed Sept. 26,

2003].)

Defendants' filed their joint motion for summary judgment on May 17, 2004. (Defs.' Br.) They argue that (1) Plaintiff waived its breach of contract claim because the batteries are not products as defined by the agreement, (*id.* at 7–11); (2) Plaintiff's negligent misrepresentation claim is barred by the economic loss rule, (*id.* at 12–13); and (3) Plaintiff's intentional misrepresentation and fraudulent concealment claims are barred because Plaintiff cannot prove knowledge or intent. (*Id.* at 14–15.) Plaintiff filed its response on June 16, 2004. (Pl.'s Resp.) Defendants filed their reply on July 6, 2004. (Defs.' Reply.) The matter is fully briefed.

## ANALYSIS

### 1.    Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the

suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990]).

**2.**   ***Evaluation of Claims***

    ***a.***   ***Breach of Contract***

    Plaintiff's first claim for relief is styled as "breach of contract against Defendant Liebert." (Compl. ¶¶ 22–26.) Defendant Liebert contends that it is entitled to summary judgment on Plaintiff's breach of contract claim. (Defs.' Br. at 7.) In the alternative, Defendant Liebert alleges that this court should enter an order dismissing "[Plaintiff's] breach of contract claim to the extent that [Plaintiff] seeks any type of damages aside from repair or replacement of the batteries." (*Id.* at 10.) Plaintiff bases its breach of contract claim on two provisions in the agreement. First, Plaintiff alleges that Defendant Liebert breached the contract because it "represented and warranted that it would provide [Plaintiff] with [b]attery systems that were new, of good quality and workmanship, and free from defects," which it failed to do. (*Id.* ¶ 23.) Second, Plaintiff alleges that [Defendant] Liebert breached the contract because it "represented that it would defend and indemnify [Plaintiff], and save [Plaintiff] harmless from all third-party claims caused by [Defendant] Liebert's [b]attery systems," and it failed to do this with respect to the claims asserted by Lehman Brothers'. (*Id.*) I will address each of Plaintiff's bases for its

breach of contract claim then I will address Defendants' assertion that this court should limit
Plaintiff's damages.

### (1)      Defendant Liebert's Obligation to Provide "new" and "good quality" products

Plaintiff's first basis for its breach of contract claim is the provision in the contract which
requires Defendant Liebert to provide "new" and "good quality" products.  (Compl. ¶ 23.)
Specifically, the agreement states that Defendant Liebert "represents and warrants that all
[p]roducts . . . purchased and delivered hereunder shall be new, of good quality and
workmanship, and shall be free from defects in material and workmanship. . . ." (Defs.' Br., Ex.
A ¶ 10 [Basic Purchase Agreement].)  Plaintiff argues that the batteries are products under the
agreement and were not new and "had component cells that were between two and five years old;
they had unknown (and therefore highly dubious) ownership, storage, and maintenance history;
and their GNB manufacturer's warranty had long since been voided."  (Pl.'s Resp. at 2.)
Defendants contend that they are entitled to summary judgment because the batteries are not
"products" within the definition of the agreement and therefore the batteries did not have any of
the agreement's product warranties.  (Defs.' Br. at 7; Defs.' Reply at 16.)  Defendants contend
that the batteries are third-party accessories.  (Defs.' Br. at 7.)  Neither "product" nor "third-
party accessory" is defined in the agreement.  I must determine whether, under the terms of the
agreement, the batteries are products.

Under Colorado law, the court must interpret the contract in its entirety and seek to
harmonize and give effect to all provisions so that none will be rendered meaningless.  *Pepcol*

*Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). "[A] contract must be construed to ascertain and effectuate the intent of the parties as determined primarily from the language of the contract." *East Ridge of Fort Collins, LLC, v. Larimer and Weld Irrigation*, 109 P.3d 969, 974 (Colo. 2005). The agreement refers to "products" in a number of relevant sections.

Section one of the agreement states that "[t]he [p]roducts purchased hereunder and other terms and conditions relevant thereto shall be described in a Product and Pricing Attachment to be executed by the parties hereto (the "P&P Attachments")." (Defs.' Br., Ex. A ¶ 1 [Basic Purchase Agreement].) Section three describes the method of ordering products. (*Id.* ¶ 3.) Specifically,

> [a]ll purchases of [p]roducts by [Plaintiff] shall be made by means of purchase orders ("Order[s]") issued from time to time by [Plaintiff] to [Defendant Liebert] . . . Each Order shall constitute an offer by [Plaintiff] to purchase the [p]roducts set forth therein. The Order(s) shall be deemed accepted by [Defendant Liebert] unless unconditionally rejected by [Defendant Liebert] . . . The quantity and description of the [p]roducts shall, except as otherwise provided herein, be as specified in the Orders(s) and/or in any applicable Specifications (as hereafter defined).

(*Id.* ¶ 3[A].) Further, "[a]ll Order(s) issued by [Plaintiff], and all acceptances by [Defendant Liebert] hereunder shall be deemed to incorporate the terms and conditions set forth in this Agreement and the P&P Attachments." (*Id.* ¶ 3[B].) Finally, the P&P Attachments list a number of products available for purchase and their price discounts and minimum commitment. (*Id.*, Ex. A at 24 [Basic Purchase Agreement (P&P Attachments Schedule 2)].) Among these products is the UPS system. (*Id.*) The P&P Attachments do not specifically mention batteries as one of Defendant Liebert's products. (*Id.*)

Pursuant to these provisions, Plaintiff submitted a purchase order to Defendant Liebert for four GNB Battery Systems with six minutes of ride-through time. (Defs.' Br., Statement of Undisputed Material Facts ¶ 17; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 17.) Defendant Liebert accepted this purchase order. (*Id.*) According to the language of the agreement, "each Order shall constitute an offer by [Plaintiff] to purchase the [p]roducts set forth therein. The Order(s) shall be deemed accepted by [Defendant Liebert] unless unconditionally rejected by [Defendant Liebert]." (Defs.' Br., Ex. A ¶ 3[A] [Basic Purchase Agreement].) The purchase order acted as a second contract between the parties. By way of acceptance of the purchase order, Defendant Liebert acknowledged that the batteries were products because only products were purchased via a purchase order. (*Id.*)

Further, the indemnification provisions, which are addressed at length below, bolster the conclusion that the batteries are products under the agreement. A portion of the indemnification provision, which Defendants rely upon, states: "the foregoing is further subject to [Defendant Liebert,] retaining and reserving the right to withdraw its undertaking of defense of [Plaintiff] in the event that: (1) the Product causing the Claim was not manufactured and/or sold by [Defendant Liebert]." (Defs.' Br., Ex. A ¶ 14[B][ii][1].) This provision seems to distinguish between those products manufactured by Defendant Liebert and those products which are only sold by Defendant Liebert. A strict reading of this contract language indicates that the batteries can be products under the agreement whether they are manufactured or sold by Defendant Liebert. Defendants' argument that the batteries are not products simply because they are not manufactured by Defendant Liebert, (Defs.' Br. at 7), is similarly unavailing. Reading the agreement in its entirety, as I must, the batteries are products as identified by the purchase order,

-13-

the terms of the P&P Attachments, and the agreement.  Thus, Defendant Liebert's obligation to offer "new and good quality" products to Plaintiff included batteries.

Defendants offer two arguments that counsel against this result.  First, Defendants assert that Plaintiff waived any promises Defendants owed Plaintiff because "[Plaintiff] knew that [Defendant] Liebert manufactured UPS systems, not the [b]atteries that are accessories to such systems." (Defs.' Br. at 7.)  Further, Defendants argue that "[t]he agreement imposed terms and conditions upon [Plaintiff's] purchase of '[p]roducts' from [Defendant] Liebert.  Both '[p]roducts' and the 'terms and conditions relevant thereto' under the [a]greement are defined in P&P Attachments." (*Id.* at 7–8.)  Defendants contend that the batteries are not listed on the P&P Attachments and therefore are not products, but third-party accessories, as defined in the agreement. (*Id.*)  As noted above, the agreement does not define third-party accessories.  Next, while the P&P Attachments do not list batteries as a product, *per se*, neither the P&P Attachments nor the agreement is an exhaustive list.  In fact the agreement specifically states that "[a]ll listings of items shall not be taken to be exclusive, but shall include other items, whether similar or dissimilar to those listed, as the context reasonably requires." (*Id.*, Ex. A ¶ 26[E].)  While Defendants vociferously argue that the P&P Attachments is an exhaustive list of products, this is not consistent with the basic terms and provisions of the agreement. (*Id.*)  Thus, Defendants' argument that the batteries are not products under the agreement is unavailing.

Next, Defendants argue that "the [b]atteries met the kind and quality requirements agreed upon by [Plaintiff], leaving [Plaintiff] without a breach of contract claim." (Defs.' Br. at 9.) Defendants argue that Plaintiff did not make any specifications for the batteries. (*Id.*) Specifically, Defendants assert that "[Plaintiff] specified nothing else about the quality,

-14-

characteristics, workmanship, or manufacture date for the [b]atteries.  Hence, [Plaintiff]

contracted with [Defendant] Liebert for the purchase of '4-GNB Battery Systems' with 'six

minutes of ride-through time,' and nothing else."  (*Id.*)  Under Defendants' interpretation of the

purchase order and the agreement, the terms and conditions of the quote and purchase order

represented the entire contract between the parties.  (*Id.* at 9–10.)  This result is absurd and

contrary to Defendants' own position.  Defendants admit that "all Orders issued by [Plaintiff],

and all acceptances by [Defendant Liebert] hereunder, shall be deemed to incorporate the terms

and conditions set forth in this [a]greement and the P&P Attachments."  (Defs.' Br., Statement of

Undisputed Material Facts ¶ 6, Ex. A ¶ 3 [Basic Purchase Agreement].)  Thus, by Defendants'

admission, the purchase order incorporated the requirement that the batteries, as products, be

"new" and of "good quality."  (*Id.*, Ex. A ¶¶ 3[B], 10[A] [Basic Purchase Agreement].)  In fact,

Defendant Liebert's employee and Rule 30(b)(6) witness admitted as much.

> Q.    Correct.  The first sentence says, "All orders issued by [Plaintiff] and all
>       acceptances by [Defendant Liebert] hereunder shall be deemed to incorporate the
>       terms and conditions set forth in this agreement and the P&P Attachments", [sic]
>       correct?
> A.    Correct.
> Q.    Was it your understanding when you were working on [Plaintiff's] orders in the
>       year 2000 that those orders would have incorporated the terms of a general
>       contract like this?
> A.    I would assume so.

(Pl.'s Resp., Ex. 3 at 44–45 [Dep. of Mark Miersen].)  Accordingly, Plaintiff can maintain a

breach of contract claim based on Defendant Liebert's obligation to provide "new" and "good

quality" products.

### *(2)    Defendant Liebert's Indemnification Obligation*

The second provision of the agreement upon which Plaintiff bases its breach of contract claim is the indemnification provision.  (Compl. ¶ 23.)  Specifically, the agreement provides that:

> [Defendant Liebert] specifically agrees . . . to defend and indemnify [Plaintiff] against and save [Plaintiff] harmless from any and all third party claims, damages, suits or liabilities (including [Plaintiff's] reasonable attorneys' fees and court costs if [Defendant Liebert] refuses or fails to defend [Plaintiff] in accordance with this Section) . . . to the extent caused by [Defendant Liebert's] [p]roduct or the acts or omissions of [Defendant Liebert], or any of its subcontractors, suppliers, officers, agents, employees or servants . . . (ii) the foregoing is further subject to [Defendant Liebert] retaining and reserving the right to withdraw its undertaking of defense of [Plaintiff] in the event that: (1) the [p]roduct causing the Claim was not manufactured and/or sold by [Defendant Liebert] or its affiliates or authorized representatives. . . (3) the [p]roduct is sold or assigned by [Plaintiff] and any agent or employee of [Plaintiff] . . . made or provided written statements, representations, or warranties concerning the [p]roduct, including . . . its application, use, accessories, maintenance or repair, which were inconsistent with [Defendant Liebert's] written warning, instructions, directions, or specifications for the [p]roduct and such statements, representations, or warranties were a contributing cause of the Claim. . .

(Defs.' Br., Ex. A ¶ 14[B].)  Under the terms of this provision, Defendant Liebert has an obligation to indemnify Plaintiff against Lehman Brothers' claims for compensation with respect to the batteries.  (*Id.*)  Defendant Liebert is responsible for Lehman Brothers' claims to the extent they were caused by acts or omissions of Defendant Liebert's employees and agents, mainly Miersen and Driscoll, or Defendant Liebert's products.  Miersen never spoke to Plaintiff or Plaintiff's representatives regarding the age or maintenance history of the batteries.  (*Id.*, Statement of Additional Facts ¶ 23, Ex. 3 at 110 [Dep. of Mark Miersen].)  Plaintiff, through its employees, believed at all times in the fall of 2000 that the batteries were new and factory fresh, consistent with all of the prior sales between Defendants and Plaintiff.  (*Id.*, Statement of Additional Facts ¶ 24; *deemed admitted at* Defs.' Reply at 10–11.)  Driscoll never advised

-16-

Sirotka that the batteries were coming from storage, were two years old, and had an unknown maintenance history.  (Pl.'s Resp., Statement of Additional Facts ¶ 22.)

Further, the batteries did not meet the industry specification.  The December 2001 capacity tests conducted by Sonoma indicated that the batteries had 66% of their rated capacity. (*Id.*, Statement of Additional Facts ¶ 31, Ex. 10 ¶ 9 [Aff. of John D. Smith].)  The governing standard for battery capacity, IEEE 1188, provides that a battery should be replaced once its measured capacity is less than 80% of full rated capacity.  (*Id.*, Statement of Additional Facts ¶ 32, Ex. 10 ¶ 10 [Aff. of John D. Smith], Ex. 24 at 9 [IEEE Standards].)  Defendant Liebert's own policy is not to install a battery that is less than 80% of its rated capacity because that signifies "an end of life."  (*Id.*, Statement of Additional Facts ¶ 33, Ex. 3 at 125 [Dep. of Mark Miersen].) Lehman Brothers' determined that the batteries were defective because they tested at less than 80% of rated capacity and did not meet manufacturer's specifications as required by Lehman Brothers' lease with Plaintiff.  (*Id.*, Statement of Additional Facts ¶ 34.)  Lehman Brothers' claims are a direct result of the acts and omissions of Defendant Liebert's employees and Defendant Liebert's product.  Thus, Defendant Liebert's breach of the indemnity clause is a separate basis for Plaintiff's breach of contract claim.

Defendants argue that the indemnity clause does not pertain to the batteries because "[t]he [b]atteries were undisputedly not manufactured and/or sold by [Defendant] Liebert." (Defs.' Reply at 15.)  Further, Defendants contend that "[Plaintiff] agreed to waive indemnification claims for the [b]atteries because the [b]atteries were not manufactured by [Defendant] Liebert."  (*Id.*)  Defendant Liebert does not cite any facts in support of this proposition.  "Conclusory allegations without specific supporting facts have no probative

value." *Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005).  Further,

Defendants' position is contrary to the facts of this case and Defendant Liebert's own position.

Defendant Liebert admits that

> on or about October 30, 2000, [Plaintiff] submitted a purchase order to
> [Defendant] Liebert that accepted and incorporated the October 9, 2000 quote, i.e.
> the purchase order was for four GNG Battery Systems with six minutes of ride-
> through time.  The batteries purchased under this purchase order are the batteries
> at issue in this lawsuit. . . .

(Defs.' Br., Statement of Undisputed Material Facts ¶ 17.)  The indemnification provision

exempts Defendant Liebert from liability in the event that "the [p]roduct causing the Claim was

not manufactured and/or sold by [Defendant Liebert] or its affiliates or authorized

representatives. . . ." (*Id.*, Ex. A ¶ 14[B].)  While it is undisputed that Defendant Liebert did not

manufacture the batteries at issue, Plaintiff submitted a purchase order for batteries that were

sold by Defendant Liebert.  (*Id.*)  Thus, Defendant Liebert is not exempt from indemnification.

Further, Defendants assert that "any claim by Lehman [Brother's] that could possibly

come within the indemnification clause would be the result of representations by [Plaintiff] to

Lehman [Brother's] that were inconsistent with the [a]greement's warranty exclusion for the

[b]atteries." (Defs.' Reply at 15.)  Again, Defendants do not cite any record support for this

proposition.  "Conclusory allegations without specific supporting facts have no probative

value." *Fitzgerald*, 403 F.3d at 1143.  Therefore, Defendants' argument to this point is

unavailing.  Accordingly, taking the facts in a light most favorable to Plaintiff, Plaintiff can

successfully assert a breach of contract claim against Defendant Liebert based on the

indemnification provision in the agreement.  Based on the foregoing, Defendant Liebert is not

entitled to summary judgment on Plaintiff's breach of contract claim.

### (3)      *Damages Limitation Provisions*

Defendants assert that "[a]t a bare minimum, this Court should enter an order dismissing [Plaintiff's] breach of contract claim to the extent that [Plaintiff] seeks any type of damages aside from repair or replacement of the [b]atteries." (Defs.' Br. at 10.)  Defendants rely on the following language of the agreement:  [Plaintiff's] sole and exclusive remedy for breach of warranty is repair or replacement of the product . . . ." (*Id.*, Ex. A ¶ 10[E] [Basic Purchase Agreement].)  Further, Defendants argue that they are not liable to Plaintiff for indirect, special, incidental, remote or consequential damages resulting from or arising out of [Defendant Liebert's] product or of such party's performance or failure to perform under this agreement." (*Id.* at 11.) Defendants allegations are specious at best.

First, the "repair and replacement" language that Defendants rely upon is expressly limited to breach of warranty claims and does not apply to Plaintiff's claim for indemnification. (*Id.*, Ex. A ¶ 10[E] [Basic Purchase Agreement].)  Despite this limitation of damages, and contrary to Defendants' position, Plaintiff is entitled to all of its contract damages under the "failure of essential purpose" doctrine.  C.R.S. § 4–2–719 provides that "[t]he agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to . . . repair and replacement of nonconforming goods or parts." C.R.S. § 4–2–719(1). While parties are free to limit damages in their contract, this remedy is not available if the remedy "fails of its essential purpose." C.R.S. § 4–2–719(2).  Specifically, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." *Id.*  Colorado law is clear that to the extent that the parties agreed to "limit the

availability of consequential damages as a remedy, they did so on the assumption that the limited

warranty to repair or replace would suffice to protect the plaintiffs from substantial

consequential damage losses." *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 748

(Colo. 1991). When a seller cannot cure defects by repair or replacement, a remedy limited to

repair and replacement fails of its essential purpose. *Curragh Queensland Mining Ltd, v.*

*Dresser Indus.*, 55 P.3d 235, 241 (Colo. App. 2002).

Here, under the terms of the agreement, Defendant Liebert agreed to repair and replace the

nonconforming batteries. (Defs.' Br., Ex. A ¶ 19[E].) Yet, Defendant Liebert unequivocally

denied Plaintiff any assistance with the batteries. (Pl.'s Resp., Ex. 22 [5/14/02 Electronic Mail

Message from Defendant Liebert to Plaintiff].) In fact, instead of prompt replacement in

accordance with the agreement, Defendant Liebert explicitly refused to replace the batteries. (*Id.*)

Specifically, Defendant Liebert informed Plaintiff that "[i]n regards to the state of the GNB

batteries on the 7th floor of the Mondo Condo . . . [Defendant] Liebert is not willing to accept

any responsibility for battery replacement costs." (*Id.*) Thus, by Defendant Liebert's failure to

repair and replace the batteries, the limited remedy of repair and replacement failed of its

essential purpose. Plaintiff could not foresee, nor have bargained for, the total inadequacy of the

warranty. *See Cooley*, 813 P.2d at 748. Therefore, the facts taken in a light most favorable to

Plaintiff show that Plaintiff is entitled to its statutory remedy of consequential damages.

Defendants contend that "[Plaintiff] bargained for six-minute [b]atteries that were third-

party accessories, not [p]roducts, meaning [Defendant] Liebert had no responsibility to

compensate [Plaintiff] for its disappointment with the [b]atteries. [Plaintiff] received the full

benefit of this bargain." (Defs.' Reply at 18.) As stated above, the batteries are products under

the agreement. Thus, Defendant Liebert had a contractual responsibility to compensate Plaintiff for its "disappointment with the batteries." Indeed, Defendants admit that if the batteries were products and Plaintiff "could somehow prove that the corresponding warranties were violated, then [Plaintiff] could receive the full benefit of the limited repair and replacement warranty." (*Id.*) Therefore, Defendants refusal to compensate Plaintiff under the terms of the agreement is not justified.

Additionally, the limited warranty of "repair and replacement" does not apply to damages claimed under the indemnification clause. Specifically, the indemnification provision provides that: "[Defendant Liebert] specifically agrees to defend and indemnify [Plaintiff] and save [Plaintiff] harmless from any and all third party claims [and] damages." (Defs.' Br., Ex. A ¶ 14[B].) Thus, reading the contract in its entirety, Defendant Liebert is responsible for all damages associated with Lehman Brothers' claims. Accordingly, Defendant Liebert is not entitled to limit Plaintiff's damages with respect to any aspect of Plaintiff's breach of contract claim.

### b.    *Negligent Misrepresentation*

Plaintiff's fourth claim for relief is styled as "negligent misrepresentation." (Compl. ¶¶ 28–44.) Defendants assert that they are entitled to summary judgment on Plaintiff's claim for negligent misrepresentation. (Defs.' Br. at 12.) Defendants contend that "[Plaintiff's] negligent misrepresentation claim falls squarely within Colorado's economic loss rule, which precludes this claim." (Defs.' Reply at 18.)

The economic loss rule provides that "a party suffering only economic loss from a breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an

-21-

independent duty of care under tort law." *Grynberg v. AGRI Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000). The economic loss rule serves to maintain a distinction between contract and tort law. *Town of Alma v. Azco Constr.*, 10 P.3d 1256, 1262 (Colo. 2000). The essential difference between a tort obligation and a contract obligation is the source of the duties of the parties. *Id.* Tort obligations generally arise from duties imposed by law, whereas contract obligations arise from promises made between parties. *Id.* Thus, "[a] breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract . . . [a] breach of duty arising independently of any contract duties between the parties, however, may support a tort action." *Id.* The Colorado Supreme Court has recognized that certain common law claims, that sound in tort and are expressly designed to remedy economic loss, may exist independent of a breach of contract claim. *Id.* at 1263 (quoting *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo. 1991) (explaining that "negligent misrepresentation is a tort claim based 'not on principles of contractual obligation but on principles of duty and reasonable conduct'"). These types of cases are not "exceptions" to the economic loss rule, "they are more appropriately viewed as simply outside the scope of the rule." *Id.* n.10. Thus, if Plaintiff can establish a negligent misrepresentation claim, then there is a duty independent of any contractual obligations and the economic loss rule will not act as a bar to Plaintiff's tort claim. *See id.* at 1263.

In order to establish a negligent misrepresentation claim, Plaintiff must show that:

[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if

he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Fluid Tech., Inc., v. CVJ Axles, Inc.*, 964 P.2d 614, 616 (Colo. App. 1998) (citing *Keller*, 819 P.2d at 71). In September 2000, Driscoll spoke to both Miersen and Kauf regarding the batteries and gleaned from these conversations that the batteries were at least two years old and were coming from storage. (Pl.'s Resp., Statement of Additional Facts ¶ 17, Ex. 14 at 64, 86–87 [Dep. of Keith Driscoll].) Driscoll never notified Sirotka or any of Plaintiff's representatives that the batteries (1) were coming from storage, (2) were two years old, and (3) had an unknown maintenance history. (*Id.*, Statement of Additional Facts ¶ 22, Ex. 11 at 164–65 [Dep. of Anthony Sirotka].) Indeed, Miersen never spoke with any person at Plaintiff's company regarding the condition of the batteries. (*Id.*, Statement of Additional Facts ¶ 23, Ex. 3 at 110 [Dep. of Mark Miersen].) Plaintiff, through its employees, believed at all times in the fall of 2000 that the batteries were new and factory fresh, consistent with all prior sales between Defendant Liebert and Plaintiff. (*Id.*, Statement of Additional Facts ¶ 24; *deemed admitted at* Defs.' Reply at 10–11.) Plaintiff has produced sufficient evidence to suggest that Defendants breached the duty to "exercise reasonable care or competence in obtaining or communicating the information." *See Keller*, 819 P.2d at 71. Thus, the economic loss rule does not apply to Plaintiff's negligent misrepresentation claim and Defendants are not entitled to summary judgment on Plaintiff's fourth claim for relief.

Defendants argue that "[t]he source of the duty alleged in [Plaintiff's] negligent misrepresentation claim is the same duty on which [Plaintiff] bases its breach of contract claim: the alleged duty 'to provide [Plaintiff] with new 6-minute Battery Systems.'" (Defs.' Reply at

20.)  This argument is unavailing.  Plaintiff has alleged a separate duty, distinct from the

contractual duty, on which it bases its negligent misrepresentation claim.  (Pl.'s Resp. at 25.)  In

their reply, Defendants do not specifically dispute any of the facts Plaintiff raised with respect

to the negligent misrepresentation claim.  Instead Defendants maintain that under Colorado law,

negligent misrepresentation is not an exception to the economic loss rule.  (Defs.' Reply at 20.)

As discussed above, Colorado law recognizes that negligent misrepresentation claims are "outside

the scope of the rule," because there is a duty independent of any contractual obligations.  *See*

*Town of Alma*, 10 P.3d at 1263.  Plaintiff sufficiently demonstrated facts to support its negligent

misrepresentation claim.

### c.      *Intentional Misrepresentation*

Plaintiff's second claim for relief is styled as "intentional misrepresentation."  (Compl. ¶¶

27–31.)  Defendants assert that summary judgment is appropriate because Plaintiff cannot

furnish any evidence of Defendants' knowledge and intent to deceive.  (Defs.' Br. at 14.)[4]  I

disagree.

In order to prove intentional misrepresentation or fraud, Plaintiff must demonstrate (1) a

false representation of material existing fact; (2) knowledge on the part of the one making the

representation that it is false; (3) ignorance on the part of the one to whom the representation is

made of the falsity; (4) intention by the one making the representation that it be acted upon; and

(5) action on the representation resulting in damages.  *Colorado Interstate Gas Co., Inc., v.*

---

[4]Defendants address Plaintiff's intentional misrepresentation claim and fraudulent
concealment claim together in two paragraphs in their brief.  These claims are separate and
distinct claims for relief and accordingly, I address them as such.

*Chemco, Inc.*, 833 P.2d 786, 793 (Colo. App. 1991).  Fraud may be inferred from circumstantial evidence.  *Kopeikin v. Merch. Mortgage and Trust Corp.*, 679 P.2d 599, 602 (Colo. 1984).  Defendants' intent to deceive may be inferred from their actions and statements.  *Crawford Rehab. Serv., Inc. v. Weissman*, 938 P.2d 540, 551 (Colo. 1997).  Moreover, questions of intent such as those in fraud, seldom lend themselves to summary judgment.  *Kennedy v. William R. Hudon, Inc.*, 659 F. Supp. 900, 906 (D. Colo. 1987).

Plaintiff has produced sufficient evidence of Defendants' purported intent to knowingly deceive Plaintiff.  Specifically, Driscoll and Miersen knew that the batteries were at least two years old, were coming from storage, and had a questionable maintenance history.  (Pl.'s Resp., Statement of Additional Facts ¶¶ 17, 23, Ex. 14 at 64, 86–87 [Dep. of Keith Driscoll], Ex. 3 at 110 [Dep. of Mark Miersen].)  Despite this knowledge, Driscoll sent Sirotka an electronic mail message concerning the pricing difference between the fifteen-minute batteries Plaintiff previously ordered and the six-minute batteries Defendants would now provide.  (Pl.'s Resp., Ex. 9 [9/27/00 Electronic Mail Message from Driscoll to Sirotka].)  In this electronic mail message, Driscoll wrote that "[t]his new battery can be on site in four weeks." (*Id.*)  Genuine issues of fact exist regarding Driscoll's intent when he wrote "new batter[ies]."  Defendants contend that new could mean "unused or fresh from the factory floor," (Defs.' Reply at 21), while Plaintiff contends that "new" can only mean "factory fresh."  (Pl.'s Resp. at 27, Statement of Additional Facts ¶ 2; Compl. ¶ 29.)  The circumstantial evidence of an intent to knowingly deceive creates a disputed question of fact for the jury.  *See Silverberg v. Colantuno*, 991 P.2d 280, 287 (Colo. App. 1998) (intent is generally a question of fact).  Accordingly, Defendants are not entitled to summary judgment on Plaintiff's intentional misrepresentation claim.

Defendants argue that Plaintiff's intentional misrepresentation claim is also an impermissible "restatement of its breach of contract claim." (Defs.' Br. at 15.) This argument likewise fails. As with Plaintiff's negligent misrepresentation claim, Plaintiff's intentional misrepresentation claim arises out of Defendants' duties that are independent from the contractual duties. *Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995) ("The fact that such alleged representations constitute the substance of [the] breach of contract claim does not require dismissal of his tort claim); *see Metro. Gas Repair Serv., Inc., v. Kulik*, 621 P.2d 313, 317 (Colo. 1980) ("The contractual obligation is not the touchstone of civil liability in tort. It is only the matrix from which an independent tort obligation may arise."). Plaintiff bases its intentional misrepresentation claim on Defendants' alleged false representation and knowledge of its falsity. (Pl.'s Resp. at 26–27.) While these facts also constitute the substance of Plaintiff's breach of contract claim, here, Plaintiff has alleged sufficient facts to maintain a claim for intentional misrepresentation that is distinct from its breach of contract claim.

### d. *Fraudulent Concealment*

Plaintiff's third claim for relief is styled as "fraudulent concealment." (Compl. ¶¶ 32–37.) Defendants contend that they are entitled to summary judgment on Plaintiff's fraudulent concealment claim because Plaintiff cannot show evidence of intent or knowledge to deceive. (Defs.' Br. at 14–15; Defs.' Reply at 20–21.) I disagree.

To establish a claim for fraudulent concealment, Plaintiff must establish: (1) concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention

that the concealment be acted upon; and (5) action on the concealment resulting in damages. *Kopeikin*, 679 P.2d at 601.  "[A] plaintiff must show that a defendant actually knew of a material fact that was not disclosed and that the defendant's intent was to cause the plaintiff to act differently than he might otherwise have done if the information had been disclosed." *Id.* (citing *Ackmann v. Merchs. Mortgage & Trust Corp.*, 645 P.2d 7, 13 [Colo. 1982].)  Moreover, like claims for intentional misrepresentation, the elements of intent and knowledge in a fraudulent concealment claim are rarely proved through direct evidence and are more often proved through circumstantial evidence.  *Id.* at 602.

Here, Plaintiff has produced sufficient evidence to survive summary judgment on its fraudulent concealment claim.  Miersen and Driscoll knew material facts regarding the batteries and did not disclose these facts to Plaintiff.  (Pl.'s Resp., Statement of Additional Facts ¶¶ 17, 23, Ex. 14 at 64, 86–87 [Dep. of Keith Driscoll], Ex. 3 at 110 [Dep. of Mark Miersen].)  Additionally, Plaintiff produced evidence that Defendants concealed the facts regarding the batteries to "keep the sale."  (Pl.'s Resp. at 29.)  Plaintiff contends that Defendants fraudulently concealed critical information to prevent losing Plaintiff's business.  Specifically, Plaintiff relies on Driscoll's testimony in which he stated: "the way we were losing business, we couldn't keep up with the demand.  So George was pressing a lot of people at the factory to do whatever they could to meet [Plaintiff's] needs." (*Id.*, Ex. 14 at 54 [Dep. of Keith Driscoll].)  Thus, Plaintiff has demonstrated that there are genuine issues of material facts that preclude summary judgment on Plaintiff's fraudulent concealment claim.

Defendants argue, on the other hand, that:

> Sirotka — [Plaintiff's employee] who dealt with [Defendant] Liebert in purchasing the [b]atteries, and who [Plaintiff] designated as the person most knowledgeable about discussions between [Plaintiff] and [Defendant] Liebert regarding [Plaintiff's] purchase of the [b]atteries — has stated that he has no knowledge of any knowing . . . fraudulent concealment on the part of [Defendant] Liebert.

(Defs.' Br. at 14.) Defendants assert that Sirotka's lack of knowledge regarding fraudulent concealment entitles them to summary judgment. (*Id.*) Defendants misstate the inquiry. Plaintiff's knowledge, through Sirotka, regarding fraudulent concealment on the part of [Defendant] Liebert is not a factor in the inquiry. Indeed, the elements of a fraudulent concealment claim do not require that Plaintiff has knowledge of Defendants' fraudulent concealment. *See Kopeikin*, 679 P.2d at 601. It is quite opposite. As stated above, Plaintiff must prove ignorance of the facts being concealed on the part of the one from whom the fact is concealed — i.e., Plaintiff. *See id.* Plaintiff is not required to establish that it had knowledge of the fraudulent concealment. Thus, Defendants' argument to this point is unavailing.

Finally, Defendants argue that Plaintiff's fraudulent concealment claim is an impermissible "restatement of its breach of contract claim." (Defs.' Br. at 15.) For the reasons stated above, (*see Analysis* § 2[c], *supra*), Defendants' argument is without merit. As with Plaintiff's negligent and intentional misrepresentation claims, Plaintiff's fraudulent concealment claim is based on tort duties independent of any contractual obligations.

*3.*     *Conclusions*

Based on the foregoing it is therefore

ORDERED as follows:

1.  Defendants' Motion for Summary Judgment (# 36) is DENIED.

-28-

2.  The court will hold a Final Pretrial Conference commencing at 9:30 o'clock a.m. on Friday, **September 2, 2005**, in Courtroom A1001, Alfred A. Arraj United States Courthouse, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which is attached.

Dated this __14__ day of July, 2005.

BY THE COURT:

s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge

### INSTRUCTIONS FOR PREPARATION AND SUBMISSION OF FINAL PRETRIAL ORDER

(Click here to return to Table of Contents)

Counsel are directed to meet in advance of the final pretrial conference and jointly develop the contents of the proposed Final Pretrial Order which shall be presented for the court's approval *no later than five days before the final pretrial conference*.  Electronic filers must follow ELECTRONIC CASE FILING PROCEDURES FOR THE DISTRICT OF COLORADO (CIVIL CASES)§ V.L. concerning submission of proposed orders.  Also, attention is directed to Fed. R. Civ. P. 16(d) (" The conference shall be attended by at least one of the attorneys who will conduct the trial for each of the parties and by any unrepresented parties.").

Listed on the following pages are matters to be included in the Final Pretrial Order.  For convenience of the court and counsel, the prescribed sequence and terminology should be used in the preparation of the Final Pretrial Order.  The bracketed and italicized information on the form explains what the court expects.  The form for the Final Pretrial Order can be copied, printed, or downloaded from the court's web site, www.cod.uscourts.gov.  The form is pages four through six of my Practice Standards — Civil posted on the web site.  Click first on the " United States District Court" button and then on the " Judges' Information" button to navigate to these trial procedures.  A computerized version of the form (in WordPerfect version 9) can be obtained by delivering a 3½" diskette to my secretary or courtroom deputy clerk and asking for a copy of the form.

The Final Pretrial Order shall be double-spaced in accordance with D.C.COLO.LCivR 10.1E, even though the instructions in the following format for the proposed Final Pretrial Order are single-spaced.  Please note also that the attached form is customized for proceedings before me, since the magistrate judges are not involved in final pretrial conferences in cases assigned to me.  Be careful to use this form, getting an electronic copy from my staff or the web site.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No.

@,

      Plaintiff,

v.

@,

      Defendant.

---

## FINAL PRETRIAL ORDER

---

## 4. DATE OF CONFERENCE

## 5. JURISDICTION

*[Provide a statement of the basis for subject matter jurisdiction with appropriate statutory citations.  If jurisdiction is denied, **give the specific reason** for the denial.]*

## 6. CLAIMS AND DEFENSES

*[Summarize the claims and defenses of all parties, including the respective versions of the facts and legal theories.  **Do not copy the pleadings.**  Identify the specific relief sought.  Eliminate claims and defenses which are unnecessary, unsupported, or no longer asserted.]*

## 7. STIPULATIONS

*[Set forth all stipulations concerning facts, evidence, and the applicability of statutes, regulations, rules, ordinances, etc.]*

## 8. PENDING MOTIONS

*[List any pending motion to be decided before trial, giving the filing date and the filing date of any briefs in support or opposition.  Include any motions on which the court has expressly postponed ruling until trial on the merits.  If there are no pending motions, please state, "None."]*

## 9.  WITNESSES

1.        **Non-Expert Witnesses**

[*List the <u>non-expert</u> witnesses to be called by each party.  List separately*:]

          1.        witnesses who <u>***will***</u> be present at trial (*see* Fed. R. Civ. P. 26[a][3][A])

          2.        witnesses who <u>***may***</u> be present at trial if the need arises (*see* Fed. R. Civ. P. 26[a][3][A])

2.        **Expert Witnesses**

[*List the <u>expert</u> witnesses to be called by each party.  List separately*:]

          1.        witnesses who <u>***will***</u> be present at trial (*see* Fed. R. Civ. P. 26[a][3][A])

          2.        witnesses who <u>***may***</u> be present at trial if the need arises (*see* Fed. R. Civ. P. 26[a][3][A])

[**ADDITIONAL INSTRUCTION:** *With each witness's name, set forth (1) the witness's address and telephone number and (2) whether he or she is currently expected to testify in person or by deposition.*]

## 10.  EXHIBITS

1.        **List of Exhibits**

[*List the exhibits to be offered by each party.  This list should be specific enough so that other parties and the court can understand, merely by referring to the list, each separate exhibit which will be offered.  General references such as "all deposition exhibits" or "all documents produced during discovery" are unacceptable.  If desired, the exhibit list form at the end of these materials may be used.  The form is available from the court's web site at the same location as this Final Pretrial Order form.*]

          *1.        Plaintiff(s):*

          *2.        Defendant(s):*

          *3.        Other parties:*

[*The following paragraph shall be included in the Final Pretrial Order:*]

      2.        Copies of listed exhibits must be provided to opposing counsel no later than five days after the Final Pretrial Conference.  The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served (by electronic means, hand delivery or facsimile) no later than eleven days after the exhibits are provided.

## 11.  DISCOVERY

[*Use the following language*:]

Discovery has been completed.  [***Unless otherwise ordered, upon a showing of good cause in an appropriate motion, there will be no discovery after entry of the Final Pretrial Order.***]

## 12.  SPECIAL ISSUES

[*List any unusual issues of law which the court may wish to consider prior to trial.  If none, please state, "None."*]

## 13.  EFFECT OF FINAL PRETRIAL ORDER

[*The following paragraph shall be included in the Final Pretrial Order*:]

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court ***to prevent manifest injustice***.  The pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the Preliminary Pretrial Order and the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 14.  TRIAL AND ESTIMATED TRIAL TIME; TRIAL PREPARATION CONFERENCE

1.          State (1) whether trial is to the court or a jury, (2) estimated trial time, (3) situs of trial, and (4) any other orders pertinent thereto.

2.          Trial Date: _____[5]

3.          Trial Preparation Conference Date and Time: _____.  At the trial preparation conference, counsel are directed to comply with the Instructions Concerning Preparation for Trial Preparation Conference delivered to all parties at the Final Pretrial Conference.[6]

\* \* \* \* \*

Please use the following format in the Final Pretrial Order:

DATED this __ day of _____, 200_.

_____

[5]**NOTE TO COUNSEL AND THE PARTIES**: the court will set the trial date at the Final Pretrial Conference; or, if it cannot do so, it will enter further orders concerning a trial setting and further proceedings.

[6]**NOTE TO COUNSEL AND THE PARTIES**: the court will set the date for the Trial Preparation Conference and distribute copies of the "Instructions Concerning Preparation for Trial Preparation Conference" at the Final Pretrial Conference.  If counsel want copies of those instructions in advance of the Final Pretrial Conference, they should obtain them from the courtroom deputy clerk or from the court's web site at the same location as this Final Pretrial Order form.

BY THE COURT:

_____

EDWARD W. NOTTINGHAM
United States District Judge

FINAL PRETRIAL ORDER TENDERED
FOR REVIEW:

_____          _____
(Name)                                    (Name)
(Address)                                 (Address)
(Telephone Number)                        (Telephone Number)
Attorney for Plaintiff                    Attorney for Defendant

Please affix counsel's signatures before submission of the Final Pretrial Order to the court.