IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–01829–EWN–CBS


LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,

      Plaintiff,

v.

LIEBERT CORPORATION, an Ohio company, and
STILLWELL-HANSEN INC., a New Jersey company,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a breach of contract case.  Plaintiff Level 3 Communications, LLC asserts a claim against Defendant Liebert Corporation for breach of contract and asserts claims against Defendants Liebert Corporation and Stillwell-Hansen Inc. for intentional misrepresentation, fraudulent concealment, and negligent misrepresentation.  This matter is before the court on (1) "Defendants' Renewed Motion For Judgment as a Matter of Law or For New Trial," filed February 6, 2006; and (2) Plaintiff's "Motion For Prejudgment Interest," filed February 6, 2006. Jurisdiction is based on 28 U.S.C. § 1332 (2006).

## FACTS

The facts in this case are set forth in great detail in this court's July 14, 2005, order and memorandum of decision denying Defendants' motion for summary judgment. (Order and Mem. of Decision [filed July 14, 2005] [hereinafter "Order"].) Additionally, the parties tried this case to a jury for three consecutive days. Thus, familiarity with the facts is assumed.

On January 17, 2006 through January 19, 2006, this court held a jury trial on Plaintiff's claims in this case. At the close of all the evidence, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). (Defs.' Mot. For Directed Verdict [filed Jan. 19, 2006] [hereinafter "Mot. For Directed Verdict"].)[1] On January 19, 2006, the court denied Defendants' motion. (Trial Mins. [filed Jan. 19, 2006].) On January 23, 2006, the jury found in favor of Plaintiff on Plaintiff's claims for: (1) breach of contract, (2) fraudulent concealment, (3) intentional misrepresentation, and (4) negligent misrepresentation. (Special Verdict Forms [filed Jan. 23, 2006].) The jury awarded Plaintiff $1,157,000.00 in compensatory damages on each claim and $525,000 in exemplary damages on the fraudulent concealment claim. (*Id.*)

On February 6, 2006, Defendants filed a renewed motion for judgment as a matter of law or for a new trial. (Defs.' Renewed Mot. for J. as a Matter of Law or For New Trial [filed Feb. 6,

---

[1]Defendants styled their motion as one for a "directed verdict." (Mot. For Directed Verdict.) The Federal Rules of Civil Procedure abandoned this terminology in 1991. Thus, "[i]f a motion is denominated as a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal." Fed. R. Civ. P. 50 advisory committee's note 1991 amendment.

2006] [hereinafter "Defs.' Br."].)  Specifically, Defendants argue that this court should issue an

order "vacating the existing judgment and entering a judgment, notwithstanding the jury's verdict,

dismissing Plaintiff's claims in this lawsuit."  (*Id.* at 1.)  Alternatively, Defendants request that this

court grant them a new trial.  (*Id.*)  On February 27, 2006, Plaintiff filed a response to

Defendants' motion.  (Pl.'s Resp. to Defs.' Renewed Mot. For J. as a Matter of Law or For New

Trial [filed Feb. 27, 2006] [hereinafter "Pl.'s Resp."].)  On March 14, 2006, Defendants filed a

reply in support of their motion.  (Defs.' Reply in Supp. of Renewed Mot. for J. as a Matter of

law or For New Trial [filed Mar. 14, 2006] [hereinafter "Defs.' Reply"].)

On February 6, 2006, Plaintiff filed a motion for prejudgment interest.  (Mot. For

Prejudgment Interest and Certification Pursuant to Local Rule 7.1[A] [filed Feb. 6, 2006]

[hereinafter "Pl.'s Br."].)  Plaintiff argues that the court should award prejudgment interest on

Plaintiff's compensatory damage award, accruing from the date of installation of the defective

batteries.  (*Id.* at 1–3.)  On February 27, 2006, Defendants filed a response to Plaintiff's motion.

(Defs.' Resp. in Opp'n to Pl.'s Mot. For Prejudgment Interest [filed Feb. 27, 2006] [hereinafter

"Defs.' Resp."].)  Defendants do not dispute that Plaintiff is entitled to prejudgment interest.  (*Id.*)

Rather, Defendants contend that the court should not award prejudgment interest from the date

on which Plaintiff installed the batteries at issue.  (*Id.*)  On March 9, 2006, Plaintiff filed a reply in

support of its motion.  (Level 3's Reply in Supp. of Mot. For Prejudgment Interest [filed Mar. 9,

2006] [hereinafter "Pl.'s Reply"].)

## ANALYSIS

### 1.     *Defendants' Renewed Motion For Judgment As a Matter of Law or For New Trial*

On February 6, 2006, Defendants filed a renewed motion for judgment as a matter of law or for new trial.  (Defs.' Br.)  Federal Rule of Civil Procedure 50, provides for a motion for judgment as a matter of law in jury trials and an alternative motion for a new trial.

Rule 50 provides:

> (a) **Judgement as a Matter of Law**.  (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. . . . (b) **Renewing Motion for Judgment After Trial; Alternative, Motion for New Trial**.  If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  The movant may renew its request for judgment as a matter of law by filing a motion no later than [ten] days after entry of judgment — and may alternatively request a new trial or join a motion for a new trial under Rule 59. . . .

Fed. R. Civ. P. 50(a)–(b) (emphasis in original).

The district court reviews a judgment as a matter of law de novo.  *Rajala v. Allied Corp.*, 919 F.2d 610, 615 (10th Cir. 1990).  Defendants are entitled to judgment as a matter of law if the ""'evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'"  *Deters v. Equifax Credit Info. Serv., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (quoting *Baty v. Willamette Indus. Inc.*, 172 F.3d 1232, 1241 [10th Cir. 1999] [quoting *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1142, 1450 (10th Cir. 1996)]).

Judgement as a matter of law in favor of Defendants is only appropriate if "'there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law.'" *Baty*, 172 F.3d at 1241 (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores*, 82 F.3d 1533, 1546–47 [10th Cir. 1996]).  The court must consider all evidence, and any inferences drawn therefrom, in a light most favorable to the non-moving party.  *Deters*, 202 F.3d at 1268.

As with a motion for judgment as a matter of law, motions for new trial are regarded with disfavor and should "only be granted with great caution."  *Franklin v. Thompson*, 981 F.2d 1169, 1171 (10th Cir. 1992) (quoting *United States v. Thornbrugh*, 962 F.2d 1438, 1442 [10th Cir. 1992], *vacated on other grounds by Untied States v. Abreu*, 508 U.S. 935 [1993]).  The decision to grant a new trial rests within the sound discretion of the district court.  *Beacham v. Lee-Norse*, 714 F.2d 1010 (10th Cir. 1983).

> No error in either the admission or the exclusion of evidence and no error in any ruling or order or in anything done or omitted by the trial court or by the parties is ground for granting a new trial or for setting aside a verdict unless the error or defect affects the substantial rights of the parties.

*Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir. 1978).  Generally, courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or substantial justice has not been done.  11 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2803 (2005); *see also Anthony v. Baker*, 808 F. Supp. 1523, 1525 (D. Colo. 1992).  Further, courts will grant new trials where, having given full respect to the jury's findings and viewing the entire evidence, the trial judge is

left with the "definite and firm conviction that a mistake has been committed." *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987).

Defendants assert seven grounds in support of their motion for judgment as a matter of law and new trial. (Defs.' Br. at 2–20.) Defendants do not differentiate the grounds upon which they request judgment as a matter of law from those that support their request for a new trial. (*Id.*) Specifically, Defendants contend that: (1) the court incorrectly instructed the jury regarding damages; (2) Plaintiff presented insufficient evidence to support submitting its intentional misrepresentation and fraudulent concealment claims to the jury; (3) Plaintiff presented insufficient evidence to support submitting its exemplary damages claim to the jury; (4) the court impermissibly commented on evidence; (5) Plaintiff's breach of contract claim should not have been submitted to the jury; (6) the court's instruction to the jury to disregard the contractual provisions tainted the jury's consideration of all claims; and (7) Plaintiff's negligent misrepresentation claim should not have been submitted to the jury under the economic loss rule. (*Id.*) Below I evaluate each of Defendants' assertions in light of the standards described above for Rule 50 motions.[2]

---

[2]Defendants' seventh ground for relief under Rule 50 is that Plaintiff's negligent misrepresentation claim should not have been submitted to the jury under the economic loss rule. (Defs.' Br. at 19.) The court thoroughly evaluated this argument when it considered Defendants' motion for summary judgment. (Order at 21–24.) Here, Defendants do not produce any new or different arguments or evidence to support the assertion that Plaintiff's negligent misrepresentation claim fails under the economic loss rule. Indeed, Defendants' argument for judgment as a matter of law or new trial consists of four sentences strung together without any citation to the law or record. (Defs.' Br. at 19.) Accordingly, the court stands on its ruling and reasoning in its July 14, 2005, order and memorandum of decision.

### a.     Instruction on Contractual Damage Limitation

As grounds for their motion for judgment as a matter of law and new trial, Defendants assert that they are entitled to this relief because the court "incorrectly instructed" the jury "regarding damages." (Defs.' Br. at 2–3.) Defendants assert that "[t]he Basic Purchase Agreement between the parties . . . expressly barred recovery of damages above and beyond repair and replacement of the batteries, and expressly precluded recovery of consequential or incidental damages." (*Id.* at 2.)

The court resolved this issue on summary judgment. (Order at 18–21.) Specifically, the court determined that: (1) the "repair and replacement" language Defendants rely upon is expressly limited to breach of warranty claims and does not apply to Plaintiff's claim for indemnification; and (2) with respect to the warranty claim, this damages limitation failed of its essential purpose under Colorado law because "Defendant Liebert unequivocally denied Plaintiff any assistance with the batteries." (*Id.* at 19–20.) Thus, the court properly instructed the jury to disregard the Basic Purchase Agreement's damages limitation provision.

Defendants' sole argument to the contrary consists of one sentence in which Defendants allege that "[Plaintiff] failed to present any evidence supporting the notion, required by Colorado law, that this case involved the 'limited circumstances' in which a limitation of remedies or damages clause deprived a party of the 'substantial benefit of the bargain.'" (Defs.' Reply at 2.) Defendants do not offer any record support for this proposition. (*Id.*) As this court discussed more thoroughly in the July 14, 2005, order and memorandum of decision, Defendant Liebert unequivocally denied Plaintiff any assistance with the repair and replacement of the batteries.

-7-

(Order at 20.)  In fact, in response to Defendants' motion for summary judgment, Plaintiff

submitted an email from Defendant Liebert wherein Defendant Liebert informed Plaintiff that "[i]n

regards to the state of the GNB batteries on the 7th floor of the Mondo Condo . . . [Defendant]

Liebert is not willing to accept any responsibility for battery replacement costs."  (Order at 20;

Level 3's Resp. to Defs.' Mot. For Summ. J. [filed June 16, 2004] [hereinafter "Pl.'s Resp. to

Mot. For Summ. J."], Ex. 22 [5/14/02 Electronic Mail Message from Defendant Liebert to

Plaintiff].)  Moreover, Defendants have not produced any evidence supporting the fact that under

the controlling law, there is no legally sufficient evidentiary basis for the court's ruling on the

damages limitation.  *See Baty*, 172 F.3d at 1241 (quoting *Harolds*, 82 F.3d at 1546–47).

Similarly, Defendants have not produced any evidence that prejudicial error has crept into the

record warranting a new trial.  *See Anthony*, 808 F. Supp. at 1525.  Accordingly, Defendants'

argument as to this point is unavailing.

> ### b.   *Sufficient Evidence Supported Submitting Plaintiff's Intentional Misrepresentation and Fraudulent Concealment Claims to the Jury*

Next, Defendants contend that they are entitled to relief under Rule 50(b) because

"Plaintiff has failed to present any evidence proving the knowledge and intent elements in each of

its intentional and fraudulent concealment claims."  (Defs.' Br. at 3.)  Specifically, Defendants

assert that:

> [t]he six minute batteries were, in Mr. Driscoll's mind, an immediate, temporary
> solution demanded by [Plaintiff] to resolve the [ninety]-day delay in delivery of the
> original batteries.  Without proof that Driscoll believed differently, and that
> Driscoll knew in September of 2000 that these six-minute batteries were intended
> as a permanent installation, [Plaintiff] did not show that he intentionally concealed
> facts or intended [Plaintiff] to act on any "falsehood or concealment."

(*Id.* at 6.)  Defendants contend that the relevant issue is Driscoll's state of mind to defraud.  (*Id.* at 4–6.)  In support, Defendants offer Driscoll's testimony at trial.  (*Id.*)  Driscoll testified that he told Plaintiff's representatives that the batteries were used, in storage, and "in good health."  (*Id.* at 4.)  Defendants miserably confuse the legal standard applicable to both the intentional misrepresentation and fraudulent concealment claims.  Indeed, the elements of intent and knowledge in fraudulent concealment and intentional misrepresentation claims are rarely proved through direct evidence and are more often proved through circumstantial evidence.  *Kopeikin v. Merch. Mortgage and Trust Corp.*, 679 P.2d 599, 601–02 (Colo. 1984).  Defendants' intent to deceive may be inferred from their actions and statements.  *Kennedy v. William R. Hudon, Inc.,* 659 F. Supp. 900, 906 (D. Colo. 1987).

In accord with this principle, Plaintiff offered circumstantial evidence regarding Defendants' intent and knowledge with respect to the fraud claims.  Defendants disregard the fact that at trial, at least three of Plaintiff's representatives denied Driscoll's allegation that he told Plaintiff the batteries were old and coming from a storage facility.[3]  (Pl.'s Resp. at 3.)  Plaintiff offered the testimony of: (1) Anthony Sirotka, the Mondo Condo project manager, (2) Darryl Spence, Plaintiff's director of construction, and (3) Bart Caruso, manager of facilities

---

[3]Plaintiff's conduct in responding to Defendants' motion for judgment as a matter of law or for new trial is reprehensible.  Plaintiff asserts countless arguments based on its representatives' testimonies at trial without citing to a single page of the transcript.  While Plaintiff provides the court with the names of these "representatives," Plaintiff essentially left it up to the court to parse through over 640 pages of trial transcript in an effort to find the supporting testimony.  This court is quite disturbed that Plaintiff received such a substantial verdict in this case yet Plaintiff does not see fit to aggressively defend that verdict with a proper submission to this court.  I admonish Plaintiff to provide the court with legal and record support for its assertions in the future.

development for Mondo Condo.  Each of these people testified that Driscoll never informed them

of the true nature of the batteries.  Specifically Caruso testified as follows:

> Q. Did Mr. Driscoll ever during this conversation tell you that these
> batteries were anywhere from two to five years old?
> A. Absolutely not.
>
> Q. Did Mr. Driscoll at that time ever tell you that these batteries were
> coming from storage?
> A. Definitely not, no.
>
> Q. Did Mr. Driscoll ever at that time tell you that these batteries were
> coming from mixed lots?
> A. No.

(Trial Transcript at 581 [Testimony of Bart Caruso].)  Sirotka testified that Driscoll never

indicated where the batteries were coming from.  (*Id.* at 228 [Testimony of Anthony Sirotka].)

> Q. Did you have any idea that it was going to be a different place than
> how you normally got your batteries?
> A. No, I did not.
>
> Q. Did you — was it your understanding, for example, that it was
> going to come from the manufacturer?
> A. All the batteries that we ordered for that job and other jobs were,
> you know, brand new batteries from the — [Defendant] Liebert,
> yes.
>
> Q. And how many of those kind of purchases are we talking about,
> prior purchases of batteries?
> A. Did I personally make?
>
> Q. Yes.
> A. I'd say [fourteen], [fifteen] orders.
>
> Q. And with respect to those orders, were they always new?
> A. They were always new, brand new.

> Q.    And with respect to the alternative [six]-minute battery that Mr.
>       Driscoll was proposing, was it your understanding that was going
>       to be new as well?
> A.    Everything that [Plaintiff] purchased was brand new.

(*Id.* at 228–29 [Testimony of Anthony Sirotka].)  Finally, Spence testified that Driscoll never

informed him of the true nature of the batteries.  (*Id.* at 357 [Testimony of Darryl Spence].)

> Q.    Did Mr. Driscoll ever tell you that the batteries that he was
>       proposing were coming anywhere else but from the factory?
> A.    He didn't state where they were coming from.  He just stated that
>       they were new.
>
> Q.    Did Mr. Driscoll tell you anything about the batteries coming from
>       storage?
> A.    No, he did not.

(*Id.*)  Here, there was substantial evidence from which the jury could infer Defendants' fraudulent

intent.  Driscoll admitted the batteries were old and coming from storage, yet Plaintiff's

representatives testified that he failed to disclose these facts.  Thus, considering all the evidence,

and any inferences drawn therefrom, in a light most favorable to Plaintiff, the jury could infer

intent to defraud from this circumstantial evidence.  *See Deters*, 202 F.3d at 1268.  Accordingly,

Defendants are not entitled to a judgment as a matter of law with respect to Plaintiff's intentional

misrepresentation and fraudulent concealment claims.

   Additionally, Defendants are not entitled to a new trial on these claims.  Defendants do not

argue that the "admission or exclusion of any evidence" affected their "substantial rights."

*Rasmussen*, 571 F.2d at 1149.  Indeed, Defendants' arguments with respect to Plaintiff's

intentional misrepresentation and fraudulent concealment claims apply more to Defendants'

request for judgment as a matter of law.  Notwithstanding Defendants reluctance to parse out its

claims for the court, there is no evidence that the jury's consideration of Plaintiff's intentional

misrepresentation and fraudulent concealment claims resulted in prejudicial error. *See* 11 Wright

& Miller, Federal Practice and Procedure § 2803. Moreover, for the reasons stated above,

Plaintiff produced sufficient evidence for the jury to properly infer that Defendants acted with

intent to deceive or in a fraudulent manner. Accordingly, Defendants are not entitled to a new

trial on this ground.

> **c.     *Plaintiff Submitted Sufficient Evidence to Support Submitting Its Exemplary Damages Claim to the Jury***

As additional grounds for judgment as a matter of law or a new trial, Defendants contend

that: "the evidence in this case did not support a finding of fraud by a preponderance of the

evidence, let alone beyond a reasonable doubt. Nor did the evidence support a finding of malice

or willful and wanton conduct." (Defs.' Br. at 7.) Defendants advance three arguments in

support of this contention. First, Defendants assert that the evidence in this case did not support a

finding of fraud. (*Id.*) Second, Defendants allege, without any explanation, that the court may

disallow the award of exemplary damages to the extent that: "(a) [t]he deterrent effect of the

damages has been accomplished; or (b) [t]he conduct which resulted in the award has ceased; or

(c) [t]he purpose of such damages has otherwise been served." (*Id.* at 8.) Finally, Defendants

contend that the exemplary damage award is unconstitutional. (*Id.*) I address each argument in

turn.

First, under Colorado Revised Statutes § 13–21–102, a party who is awarded actual

damages may also be awarded exemplary damages if the injury complained of is attended by

"circumstances of fraud, malice, or willful or wanton conduct."  Colo. Rev. Stat. § 13–21–102

(1)(a).  Here, as stated above, the jury's finding that the elements of fraud existed in this case also

established the "circumstances of fraud" required for exemplary damages.  Accordingly, Plaintiff's

award of actual damages on the intentional misrepresentation and fraudulent concealment claims

authorized an award for exemplary damages.  *See Berger v. Security Pac. Info. Sys., Inc.*, 795

P.2d 1380, 1386 (Colo. App. 1990).

Second, Defendants urge the court to "disallow" the award for exemplary damages to the

extent that: "(a) [t]he deterrent effect of the damages has been accomplished; or (b) [t]he conduct

which resulted in the award has ceased; or (c) [t]he purpose of such damages has otherwise been

served."  (Defs.' Br. at 8.)  Defendants contend that "each of these factors is present" and this

court should disallow the award.  (*Id.*)  Defendants do not explain how any of these factors is

present.  Moreover, Defendants do not offer any legal or other support for this proposition.  In

fact, Defendants' entire argument with respect to these factors consists of two sentences.  (*Id.*)

The court cannot begin to surmise what evidence supports Defendants' contention that "each of

the factors is present in this case" and the court should "disallow the jury's exemplary damage

award."  Accordingly, Defendants' argument as to this point is unavailing.

Finally, Defendants contend that the exemplary damage award is unconstitutional.  (*Id.* at

8–10.)  Defendants allege unconstitutionality based on two grounds: (1) the exemplary damage

award unconstitutionally punishes conduct occurring outside of Colorado; and (2) Defendants'

conduct was not of a degree of reprehensibility that could constitutionally warrant an exemplary

damage award.  (*Id.* at 8–9.)  In support of the first argument, Defendants cite *State Farm Mut.*

-13-

*Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  Defendants contend that *Campbell* is instructive because "a state has 'no legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction.'"  (Defs.' Br. at 8 [quoting *Campbell*, 538 U.S. at 421].)  In *Campbell*, the United States Supreme Court was concerned with a state punishing a defendant "for conduct that may have been lawful where it occurred."  *Campbell*, 538 U.S. at 421.  The Court noted that "[l]awful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff."  *Id.* at 422.  Here, while much of the tortious conduct at issue occurred outside of Colorado, Defendants do not somehow claim that their tortious conduct is legal in New York, New Jersey, and Ohio.  Further, the *Campbell* Court explained that the exemplary damage award in *Campbell* was inappropriate because "[t]he courts awarded [exemplary] damages to punish and deter conduct that bore no relation to the Campbells' harm."  *Id.*  Here, the jury awarded exemplary damages for the same conduct that gave rise to the compensatory damage award.  Thus, the concerns in *Campbell* are not present in the instant case.

Next, Defendants contend that their conduct was not of a degree of reprehensibility that could constitutionally warrant an exemplary damage award.  (Defs.' Br. at 9.)  In support, Defendants cite *BMW of North America v. Gore*, 517 U.S. 559 (1996).  In *BMW*, the United States Supreme Court set forth the following factors for courts to use in evaluating whether an exemplary damage award is reasonable: (1) reprehensibility, (2) ratio of the exemplary damage

award to the actual harm, and (3) sanctions of comparable misconduct. *Id.* at 575–86. Defendants only challenge the first two factors.

With respect to the first factor, the Court stated that "some wrongs are more blameworthy than others." *Id.* at 575. For example, "trickery and deceit are more blameworthy than negligence." *Id.* at 576. Here, the jury found Defendants liable for intentional misrepresentation and fraudulent concealment. Thus, Defendants' conduct was sufficiently reprehensible to warrant exemplary damages. Second, the Court instructed that exemplary damages must not be unreasonable to the actual harm inflicted on Plaintiff. *Id.* at 580. In *BMW*, the court was concerned with an award of punitive damages over 500 times the amount of the plaintiff's actual harm. In striking down that award, the Court noted that damage awards in other cases "'more than [four] times the amount of compensatory damages' might be 'close to the line,' but did not 'cross the line into the area of constitutional impropriety.'" *Id.* at 581. Those concerns are not prevalent here. In the instant case, the jury awarded Plaintiff $525,000 in exemplary damages in light of a $1,157,000 compensatory damage award. This exemplary damage award is slightly less than half of the compensatory damage award. Thus, under the controlling law, there was a "legally sufficient evidentiary basis" with respect to the exemplary damage claim. *See Baty*, 172 F.3d at 1241 (holding that judgment as a matter of law is only appropriate if there is no legally sufficient evidentiary basis with respect to a claim under the controlling law). Accordingly, Defendants are not entitled to judgment as a matter of law with respect to the exemplary damage issue.

Additionally, Defendants are not entitled to a new trial on the exemplary damage issue. Again, Defendants do not advance any specific arguments with respect to its request for a new trial except to state that it is entitled to a new trial because the jury considered and awarded exemplary damages. Viewing the evidence in a light most favorable to Plaintiff and giving full respect to the jury's findings, the court is not left with "the definite and firm conviction that a mistake has been committed." *See Landes Constr. Co.*, 833 F.2d at 1372. Accordingly, Defendants are not entitled to a new trial on this issue.

      ***e.***       ***The Court's Comments Did Not Preclude Defendants' Right to a Fair Trial***

Next, Defendants contend that they are entitled to judgment as a matter of law and a new trial because the court made comments on the evidence and witness credibility that precluded a fair trial. (Defs.' Br. at 10–14.) Specifically, Defendants assert the following: (1) "the [c]ourt noted that this matter was not 'complicated' and the jury was going to either believe Mr. Driscoll or 'the other guy ([Plaintiff's] employee Anthony Sirotka) who swears;" (2) during the course of improper cross examination, "the [c]ourt not only overruled objections to this line of inquiry, it also responded to Mr. Driscoll's reluctance to make these calculations by scolding Mr. Driscoll 'you're not going to evade it that way;'" (3) in response to Defendants' counsel's objection to Driscoll's testimony, "the [c]ourt responded that "I'm going to allow some latitude, because it's evident this witness doesn't want to be doing this, and he did it in his deposition." (*Id.* at 10–13.) Defendants ultimately contend that "[t]his type of commentary on the sole witness whose credibility is being weighed was improper and essentially left [Defendants] with no ability to obtain a fair judgment." (*Id.* at 14.)

-16-

"'It is within [the province of a federal trial judge], whenever he thinks it is necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence.'" *Wilson v. Bicycle South, Inc.*, 915 F.2d 1503, 1508 (10th Cir. 1990) (quoting *Quercia v. United States*, 289 U.S. 466, 469 [1932]).

> Sir Matthew Hale thus described the function of the trial judge at common law: 'Herein he is able, in matters of law emerging upon the evidence, to direct them; and also in matters of fact to give them a great light and assistance by his weighing the evidence before them, and observing where the question and knot of the business lies, and by showing them his opinion even in matters of fact; which is a great advantage and light to laymen.

*Id.*

Here, the court's comments were not improper.  It is doubtful that the remarks criticized by Defendants as "commentary" were really comments on the evidence at all.  Indeed, in evaluating the aforementioned comments, the only comment that could possibly be a reflection of the court's opinion on the evidence is the court's expression that the matter is not "complicated" and the jury was going to either believe Mr. Driscoll or "the other guy ([Plaintiff's] employee Anthony Sirotka) who swears."  (Defs.' Br. at 10.)  In viewing this statement objectively, the court cannot conceive how this statement reflects poorly on Defendants' witness.  At most, this statement is a negative reflection on Plaintiff's witness "who swears."  Even assuming this comment can be considered a statement showing favor toward Plaintiff's witness, this is clearly not prejudicial and completely within the court's province.  Indeed, the trial judge may comment upon the evidence as long as he instructs the jury that it is the sole judge of the facts and that it is not bound by his comments provided these comments are not so highly prejudicial.  *Wilson*, 915

-17-

F.2d at 1508.  The court properly instructed the jury regarding witness credibility and factual

issues.  With respect to credibility, the court instructed the jury that: "[i]n resolving factual

disputes, you will need to decide what witnesses and what evidence to believe.  The job of judging

the credibility of the witnesses and the weight to be given to each witness' testimony is yours, and

yours alone."  (Trial Transcript at 650 [Jury Instructions].)  With respect to factual issues, the

court instructed the jury as follows:

> [m]y questions and comments are not to be taken by you as evidence in the case.
> The sole purpose of such questions and comments to the extent they have
> occurred has been to assist the jury in finding the facts.  My comments are only to
> be taken by you as expressions of the judge's opinions concerning the facts.  And
> the jury may disregard those factual comments entirely, since it is the jury which is
> — which constitutes the sole judge of the facts in this case.

(*Id.* at 643–44.)  Thus, to the extent the court made any comments or suggestions regarding

witness credibility or factual issues, these comments were duly cured by the court's explicit

instructions on these issues.  Accordingly, Defendants are not entitled to judgment as a matter of

law with respect to this issue.

Additionally, Defendants contend they are entitled to a new trial because of the court's

commentary.  As stated above, it is questionable whether those comments relate to witness

credibility or factual issues in the case.  Rather, it appears the court's comments were evidentiary

in nature and appropriate to facilitate the trial.  Assuming the court did make certain comments

Defendants perceive as inappropriate, Defendants did not suffer "substantial injustice" thereby

mandating a new trial.  *See Anthony*, 80 F. Supp. at 1525.  Accordingly, Defendants are not

entitled to a new trial on this issue.

*f.*     *Plaintiff's Breach of Contract Claim Was Properly Submitted to the Jury*

Next, Defendants contend that they are entitled to judgment as a matter of law or a new trial because "as a matter of law, Plaintiff's breach of contract claims should not have been submitted to the jury." Defendants proffer four arguments in support of this contention. (Defs.' Br. at 14–18.) First, Defendants contend "the evidence confirmed that the batteries at issue in this case were undisputedly accessories that were not manufactured by [Defendants]." (*Id.* at 14.) Second, Defendants argue that "Plaintiff received precisely the batteries it contracted for." (*Id.* at 16–17.) Third, Defendants contend that the indemnification provision "relied upon by Plaintiff relates to traditional suits and claims, not the kind of circumstance involved in the Lehman Brothers lease dispute." (*Id.* at 17.) Finally, Defendants argue that "Plaintiff failed to prove that it complied with contractual prerequisites to Plaintiff's indemnification claim." (*Id.*) The court thoroughly addressed Defendants' first and second arguments in Defendants' motion for summary judgment. (Order at 10–18.) The evidence adduced at trial supports the court's ruling on Defendants' motion for summary judgment. Thus, the court will not re-engage Defendants with respect to these arguments. I briefly address Defendants' new arguments with respect to Plaintiff's breach of contract claim.

First, Defendants assert that "the indemnification provision relied upon by Plaintiff relates to traditional suits and claims, not the kind of circumstance involved with the Lehman Brothers lease dispute." (Defs.' Br. at 17.) The indemnification provision in the Basic Purchase Agreement provides in relevant part that: "[Defendant Liebert] specifically agrees . . . to defend and indemnify [Plaintiff] against and save [Plaintiff] harmless from any and all third party claims,

damages, suits, or liabilities. . . ." (Defs.' Mot. Summ. J. [filed May 17, 2004] [hereinafter "Defs.' Mot. Summ. J."], Ex. A ¶ 14[B] [Basic Purchase Agreement].)  Defendants assert, without any citation to the record, that "[e]vidence elicited at trial establishes that at no time did Lehman Brothers ever formally submit a claim, demand or lawsuit of any kind . . ." (Defs.' Br. at 17.)  A claim is defined as "a demand for money or property to which one has a right."  Black's Law Dictionary 240 (7th ed. 1999).  Here, Plaintiff produced sufficient evidence that Lehman Brothers submitted a claim to Plaintiff and Plaintiff communicated that claim to Defendant Liebert.  At trial, Nat Tafuri, Plaintiff's facility manager, and Oliver Papraniku, project manager for Lehman Brothers on Mondo Condo, testified that after Defendants' batteries failed, Lehman Brothers communicated to Plaintiff that Plaintiff needed to replace the defective batteries.  (Trial Transcript at 56–59, 321 [Testimonies of Nat Tafuri and Oliver Papraniku].)  Thus, viewing the evidence in a light most favorable to Plaintiff, Plaintiff made a claim to Defendant Liebert under the indemnity provision.

Defendants seem to indicate that Lehman Brothers had to file a lawsuit against Plaintiff in order to trigger Defendant Liebert's responsibilities under the indemnity provision.  (Defs.' Br. at 17.)  Filing a lawsuit was only one of four ways Defendant Liebert's responsibilities could be triggered.  (*See* Defs.' Mot. Summ. J., Ex. A ¶ 14[B] [Basic Purchase Agreement].)  Accordingly, the court properly submitted Plaintiffs' breach of contract claim regarding the indemnity provision to the jury and Defendants are not entitled to judgment as a matter of law.

Next, Defendants argue that Plaintiff failed to comply with the contractual prerequisites of asserting its indemnification claim because Plaintiff failed to give Defendant Liebert "sole control

of the defense or settlement" of Lehman Brothers' third party claim.  (Defs.' Br. at 17.)  Again, Defendants' sole argument consists of five sentences without any citation to the record.  Further, Defendants do not direct the court to the contractual provision upon which they rely.  Thus, the court is unclear regarding the basis of Defendants' argument.  Moreover, Plaintiff produced substantial evidence at trial demonstrating that Defendant Liebert rejected Plaintiff's request for assistance in resolving Lehman Brothers' claim.  Accordingly, Defendants are not entitled to judgment as a matter of law or a new trial with respect to this issue.

g.    *The Court's Instructions Regarding the Contractual Provision Did Not Taint The Jury's Consideration of All Claims*

As yet an additional ground for their motion for judgment as a matter of law and new trial, Defendants assert that "[o]ver objection, the [c]ourt instructed the jury consistent with Plaintiff's [s]econd [s]upplemental [j]ury [i]nstruction requiring the jury to apply the 'new' and 'good quality' provision to the third-party accessory batteries when this warranty is specifically excluded."  (Defs.' Br. at 18.)  Defendants contend that the court should have allowed them to introduce evidence regarding the fact that Defendants made "no representations" about third party accessories under the agreement and provide "no coverage" for them under the warranty.  (*Id.* at 18–19.)  Defendants essentially argue that the court should have allowed the jury to determine whether the batteries were products or third-party accessories under the terms of the contract. Defendants' argument is entirely misplaced.

Under Colorado law, the interpretation of a contract is a question of law.  *Highlands Ranch Univ. Park, L.L.C. v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1025 (Colo. App.

-21-

2005); *Kirk v. Kitchens*, 49 P.3d 1189, 1192 (Colo. App. 2002).  A court reviews questions of

law, *Kirk*, 49 P.3d at 1192, while a jury evaluates questions of fact.  *People v. Silva*, 987 P.2d

909, 915 (Colo. App. 1999).  Here, in ruling on Defendants' motion for summary judgment, the

court interpreted the contract and determined that as a matter of law the batteries were products

under the contract and not third-party accessories.  (Order at 11–13.)  In light of this court's

ruling on summary judgment, the court properly instructed the jury that the contractual warranty

was applicable to the batteries at issue because the batteries were products.  Defendants'

argument that they should have been permitted to submit evidence regarding the limitations of the

warranty with respect to third-party accessories ignores the court's legal interpretation of the

contract.  Thus, the court did not err in instructing the jury according to its legal findings.  *See*

*Rasmussen*, 571 F.2d at 1149 (new trial is not appropriate unless the alleged error or defect

affects the substantial rights of the parties).  For the reasons stated above, the court is not left

with the "definite and firm conviction that a mistake has been committed."  *See Landes Constr.*

*Co.*, 833 F.2d at 1372.  Accordingly, Defendants are not entitled to judgment as a matter of law

or a new trial with respect to this issue.

**2.**      ***Plaintiff's Motion For Prejudgment Interest***

On February 2, 2006, Plaintiff filed a motion for prejudgment interest.  (Pl.'s Br.)  Plaintiff

argues it is entitled to prejudgement interest accruing from the date Plaintiff installed Defendants'

defective batteries.  (*Id.* at 3.)  Defendants do not dispute that Plaintiff is entitled to prejudgment

interest.  (Defs.' Resp. at 1–4.)  Instead, Defendants argue that Plaintiff "is not entitled to

prejudgment interest from that date." (*Id.* at 4.)  In support, Defendants rely solely on an

unpublished Colorado Court of Appeals decision styled *Sumerel v. Goodyear Tire & Rubber Co.*, Court of Appeals No. 02–CA–1997, Slip. Op. (Colo. App. June 23, 2005). Defendants contend that *Sumerel* stands for the proposition that in Colorado "interest may be awarded from the date of installation of an allegedly defective product if, and only if, the plaintiff has produced evidence of the repair and/or replacement costs on that date." (Defs.' Resp. at 1.) Defendants assert that Plaintiff's failure to produce such evidence precludes Plaintiff from receiving prejudgment interest "beginning on that date." (*Id.*)

A federal court sitting in diversity, as here, applies state law regarding issues of prejudgment interest. *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1288 (10th Cir. 2005). Under Colorado law, prejudgment interest in non-personal injury actions is available "at a rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." Colo. Rev. Stat. § 5–12–102(1)(b). In *Loughridge*, the Tenth Circuit evaluated the accrual date for prejudgment interest in a defective product installation case. The *Loughridge* Court determined that the plaintiffs were entitled to prejudgment interest starting at the time the defective product was installed. *Loughridge*, 431 F.3d at 1288. Specifically, the Tenth Circuit, quoting the district court, determined that "'Goodyear's defective product — whether functional for a time or not — was defective from the time of installation. Accordingly, funds owed for such replacement were wrongfully withheld starting at the time of installation.'" *Id.* (quoting *Loughridge v. Goodyear Tire & Rubber Co.*, 281 F. Supp. 2d 1252, 1256 [D. Colo. 2003]). The *Loughridge* Court cautioned that it was

concerned with "the equities of allowing a purchaser to enjoy the use of a functional product for

years before damages manifest, and then award the purchaser prejudgment interest from the date

of the purchase, [but] the district court's disposition is consistent with Colorado law and this

circuit's precedent." *Id.* Thus, under *Loughridge*, Plaintiff is entitled to prejudgment interest

calculated from the date Plaintiff installed the defective batteries, here, December 15, 2000.[4]

Plaintiff contends it is entitled to prejudgment interest at a rate of eight percent compounded

annually, in the total amount of $557,916.80 through January 23, 2006 and accruing at a per diem

rate of $372.61 pending entry of final judgment.  (Pl.'s Br. at 6.)  Defendants do not dispute this

amount.  (Defs.' Resp., *passim*.)

   Instead, Defendants contend that the "Colorado Court of Appeals has held that 'absent

evidence that the replacement costs actually incurred reflected what replacement would have cost

at the time of installation,' the [c]ourt 'is not persuaded that prejudgment interest should have

been awarded from the installation dates.'"  (Defs.' Resp. at 3 [quoting *Sumerel*, Court of

Appeals No. 02–CA–1997, pp. 11–12].)  First, *Sumerel* is not binding precedent because is it an

unpublished Colorado Court of Appeals decision.  *Bittle v. Brunetti*, 750 P.2d 49 n.2 (Colo.

1988) (unpublished decisions are not binding precedent); *Yahweh v. Zavaras*, 114 F.3d 1199,

---

[4]Plaintiff asserts the parties stipulated "that installation occurred on December 15, 2005."
(Pl.'s Br. at 6.)  Plaintiff contends that it is entitled to prejudgment interest for a period of "5.11
years" ending on January 23, 2006.  (*Id.*)  Defendants allege that the stipulated installation date
was December 15, 2000.  (Defs.' Resp. at 3.)  Neither party provides the court with evidence of
this "stipulation."  Accordingly, the court infers that "5.11 years" back from January 23, 2006
would be December 15, 2000.

(table), 1997 WL 303657 *3 (10th Cir. June 6, 1997) (unpublished decision of the Colorado Court of Appeals is not binding on any court in Colorado).

Second, the *Loughridge* Court considered and ignored *Sumerel*. The Court of Appeals issued its decision in *Sumerel* on June 23, 2005. *Sumerel*, No. 02–CA–1997. The defendant in *Loughridge* submitted the *Sumerel* decision to the Tenth Circuit as supplemental authority prior to oral argument. (Defs.' Reply, Ex. A [*Loughridge et al. v. Chiles Power Supply Co. and The Goodyear Tire & Rubber Co.*, 10th Cir. Case Nos. 04–1261 & 04–1263; Notice of Supplemental Authority].) Thus, the Tenth Circuit had the opportunity to consider *Sumerel* and did not follow its reasoning. This court is obligated to follow the Tenth Circuit precedent on this issue. Accordingly, Defendants' argument is unavailing and Plaintiff is entitled to prejudgment interest in the amount stated above.

**3.**     ***Conclusions***

Based on the foregoing it is therefore

ORDERED as follows:

1.     Defendants' renewed motion for judgment as a matter of law or for new trial (# 109) is DENIED.

2.     Plaintiff's motion for prejudgment interest (# 110) is granted.

3.      The clerk will forthwith enter final judgment in favor of Plaintiff and against

Defendants in the amount of $1,157,000 in compensatory damages, $525,000 exemplary

damages, and $39,124.05 in prejudgment interest through May 8, 2006.

Dated this 8th day of May, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge